**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| FUN GUYS, LLC, | Case No. 1:17-cv-656 |
| Plaintiff, | |
| v. | |
| R. DAVID FRED, WINTERLAND, INC., and DAVID FRED DEVELOPMENT CORP., | **JURY TRIAL DEMANDED** |
| Defendants. | |

**VERIFIED COMPLAINT**

NATURE OF THE ACTION

1.      This case arises from a blatant fraud committed by the defendants, R. David Fred ("Fred") and his purported corporation, Winterland, Inc. ("Winterland") in connection with the settlement of a contract dispute between Winterland and the plaintiff, Fun Guys, LLC ("Fun Guys").

2.      In September 2016, Fun Guys entered into lease agreements with Winterland under which Winterland would provide equipment and lights for three designated venues at which Fun Guys would erect, promote and sell admission to Christmas lights displays. Fred represented to Fun Guys that Winterland was an extant corporation under Indiana law and had the capacity to enter into the lease agreements.  There were various disagreements between the parties during the first few months of performance, and they ended up reaching an agreement under which the lease agreements would be terminated.

3.      Specifically, on February 8, 2017 the parties agreed to the terms of their settlement.  Under the agreement, the contracts were rescinded, each party released the other

pursuant to a release agreement previously emailed to Winterland on January 26, 2017, and Fun Guys would pay $20,000 to Winterland by cashier's check.  The following day, Fun Guys confirmed the agreement by again emailing defendants the agreed-to release, signed and dated by its CEO January 26, along with the agreed-to financial terms.  Under those terms, Fun Guys would pay Winterland $20,000 by cashier's check as consideration.  Fred sent a return email agreeing to all the terms and setting a date for the exchange of the cashier's check and the fully executed release agreement of February 14, 2017. On that date, Fun Guys' CEO drove to Winterland's location, handed over the check to Fred, and received from Fred a fully-executed release document purporting to be the release that Fun Guys had signed and sent to Winterland.

4.    That document was a forgery.  Unbeknownst to Fun Guys, Fred had surreptitiously created a new document.  The new document included every word copied verbatim from the actual January 26, 2017 release to which the parties had agreed. However, Fred had fraudulently inserted a completely new, never discussed and unenforceable term into January 26th release agreement—a five-year, worldwide non-compete clause—and had copied and pasted Fun Guys' CEO's signature and the date of that signature from the January 26th release into the forged document.  Fred did so in order to hide the fact that Fred and Winterland had forged the document and with the specific intent to deceive Fun Guys, to impose a new term on an already final contract, and to cause Fun Guys to turn over the cashier's check.  When Fun Guys realized what had happened and demanded that the true agreement be recognized, Fred and Winterland simply refused to respond.  They did, however, cash the cashier's check.

5.    The forged document and spurious non-compete have created a situation in which Fun Guys' business is at imminent risk of destruction.  Fun Guys is in the midst of negotiating a $2 million financing deal with a bank, without which its business cannot proceed, and the non-

compete puts it in immediate jeopardy of losing that financing.  Without the financing, Fun Guys will be unable to purchase the lights and equipment it needs.  It will also put in jeopardy Fun Guys' ability to obtain contracts with new venues and may cause Fun Guys to default on contractual obligations to existing venues.

6.      Fun Guys seeks a temporary restraining order and preliminary and permanent injunctive relief against the enforcement of the spurious non-compete and declarations that:  (1) the enforceable agreement between the parties consists of the release originally signed by Fun Guys, together with the emails in which Fun Guys agreed to pay $20,000 and Winterland and Fred accepted those terms; (2) the spurious and forged version of the release agreement is void and unenforceable; and (3) even if it were otherwise valid, the forged release agreement contains an unenforceable covenant not to compete.  In addition, Fun Guys seeks compensatory damages for fraud, as well as treble damages for conversion, and punitive damages.

7.      During the investigation of this case by plaintiff, plaintiff also learned about a prior fraud that bears directly on the ability of defendants to enforce any contractual rights at all against Fun Guys.   Specifically, plaintiff has uncovered the fact that at all relevant times between September 2016 and the present, Winterland was not an extant corporation under Indiana law and did not have the power to contract with Fun Guys.  As a result, the underlying lease agreements were procured by fraud and are void and unenforceable.

PARTIES

8.      Plaintiff Fun Guys, LLC is a limited liability company organized and existing under the laws of the State of Ohio with its principal place of business located in Medina, Ohio.  Fun Guys is engaged in the business of staging holiday light shows.  Fun Guys has two members.  One of the members of Fun Guys is Ignite Partners, LLC, a limited liability company

organized under the laws of the State of Illinois, with its principal place of business in Elgin, Illinois.  Ignite Partners, LLC in turn has three individual members, two of whom reside in Illinois and the third of whom resides in Missouri.  The other member of Fun Guys is Maple Lane Holdings, LLC.  Maple Lane Holdings, LLC is organized under the laws of the State of Wyoming, with its principal place of business in Medina, Ohio.  Its sole member is a Canadian citizen who resides in Medina, Ohio.

9.     Defendant R. David Fred resides in Cicero, Indiana.  He was and continues to purport to be the owner of Defendant Winterland, Inc., and he is the owner of Defendant David Fred Development Corp.   Because Winterland, Inc. was not in fact a corporation under Indiana law at any relevant time, Fred is personally liable for all actions supposedly taken by Winterland, Inc. under Indiana Code 23-1-21-4.

10.     Defendant Winterland, Inc. is a defunct corporation previously organized and existing under the laws of the State of Indiana with its principal place of business located in Cicero, Indiana.  Winterland, Inc. has not existed or had any legal capacity since it was merged into Defendant Fred Development Corp. in 2012, but it is the purported party to the lease agreements.

11.      David Fred Development Corp. is an Indiana corporation with its principal places of business located in Cicero, Indiana. Winterland, Inc. merged into David Fred Development Corp. in 2012.   As a result, David Fred Development Corp. is liable for all actions taken by Winterland.

JURISDICTION AND VENUE

12.     This Court has jurisdiction over the subject matter of the action pursuant to 28 U.S.C. § 1332 in that all three defendants are exclusively citizens of Indiana and plaintiff is a

citizen of Illinois, Missouri, Ohio, and Wyoming, and the amount in controversy exceeds $75,000.

13.     This court has personal jurisdiction over the defendants in that they are residents of the State of Indiana.

14.     Venue is proper pursuant to 28 U.S.C. § 1391 in that defendants reside in this judicial district.

FACTS COMMON TO ALL COUNTS

15.     Fun Guys and Winterland entered into three separate lease agreements dated between September 9, 2016 and September 14, 2016 (collectively, the "Lease Agreements"), under which Winterland agreed to supply to Fun Guys certain lights, decorative items, display equipment and materials for three holiday light shows to be staged by Fun Guys, and Fun Guys agreed to pay an annual rental fee to Winterland.   True and correct copies of the Lease Agreements are attached as Exhibit 1.   In fact, Winterland did not exist as a corporation under Indiana law at the time the  agreements were made or at any other relevant time.

16.     A series of disputes arose between Fun Guys and Winterland.

17.     On January 26, 2017, representatives of Fun Guys, including Fun Guys' Chief Executive Officer, Grant Reeves ("Reeves"), and Winterland's President, defendant R. David Fred and another Winterland representative, met to resolve the parties' disputes.   During that meeting, Fun Guys and Winterland reached a compromise agreement resolving the disputes.   As part of that compromise, Fun Guys and Winterland agreed during such meeting to rescind the Lease Agreements and waive and release any claims against each other arising out of the Lease Agreements.

18.     In an email dated January 26, 2017, Reeves forwarded to Fred a Mutual Rescission and Release Agreement (the "January 26th Release") signed by Reeves.  A true and correct copy of the January 26th Release is attached as Exhibit 2.

19.     The January 26th Release contained two substantive provisions:

> 1.     The Original Contracts are hereby terminated and deemed null and void as of the Effective Date and neither party shall have any further rights or legal obligations thereunder.

> 2.     The Parties release and forever discharge any and all liabilities that have arisen or may arise from the Original Contracts, and the Parties waive any and all claims or right to assert any claim which has arisen or may arise from the Original Contracts prior to the Effective Date of this agreement.

20.     Prior to sending the January 26th Release, Reeves executed it on behalf of Fun Guys and dated his signature "1-26-17."

21.     On February 6, 2017, Fred sent Reeves an email itemizing certain additional amounts Winterland asserted were owed by Fun Guys pursuant to the Lease Agreements based upon Winterland's inventory of the goods that Fun Guys had leased.

22.     Shortly thereafter, Reeves and Fred discussed those disputed additional amounts Winterland asserted were due and owing.  On February 8, 2017, the parties agreed that Fun Guys would pay Winterland the total sum of $20,000.00 as part of the final settlement but that otherwise the settlement terms would remain identical.

23.     On February 9, 2017, Reeves emailed Fred confirming the terms of the parties' agreement that fully resolved their dispute (the "February 9th Email").  Attached to that email was another copy of the January 26th Release previously executed by Reeves.  A true and correct copy of the February 9th Email is attached as Exhibit 3.

24.     More specifically, the February 9th Email reads, in pertinent part:

As a follow up to our call yesterday, I am confirming the following details we have agreed on:

1.      In exchange for the attached executed mutual release we have agreed to settle on a full and final payment from Fun Guys LLC to Winter Land Inc. of $20,000. USD

2.      GR will deliver to DF a certified Bank Draft for the $20,000. on Tuesday February 14, 2017

3.      GR will pick up the skid of returned items from WL at this time.

David, I should get there by 10AM on Tuesday, as I have to be back in Ohio by 3:00PM.

25.     Fred confirmed the parties' agreement and replied, "See you Tuesday," in response to the February 9th Email.  Exhibit 4 attached.

26.     On Tuesday, February 14, 2017, Reeves travelled to Winterland's principal place of business near Marion, Indiana.  Shortly after arriving, Reeves tendered to Fred a cashier's check in the sum of $20,000.00 made payable from Fun Guys to Winterland.  A redacted copy of the check is attached as Exhibit 5.

27.     Contemporaneously with providing Fred the cashier's check, Reeves also presented Fred with copies of the January 26th Release for Fred to execute on behalf of Winterland.

28.     Fred, however, stopped Reeves and asserted he already printed copies of the January 26th Release.  Fred then signed and tendered to Reeves copies of a document which Fred represented to be the January 26th Release executed by Fred on behalf of Winterland.  The document contained Reeves' signature as well as the date "1-26-17."  Seeing his prior signature dated 1-26-17, and knowing of Fred's agreement to the terms set forth in the release and email, Reeves left Winterland's principal place of business believing he had a copy of the fully executed January 26th Release.

7

29.     Shortly after leaving Winterland's office, Reeves reviewed the document executed by Fred that Reeves believed to be the January 26th Release (the "Forged Document"). A copy of the Forged Document is attached as Exhibit 6.

30.     The Forged Document was not in fact the document that Reeves had signed and dated on January 26 to which Fred and Winterland had agreed.  Instead, Fred and Winterland had fraudulently copied and pasted Reeves' signature and date from the January 26th Release onto a different document that contained an additional provision.

31.     More specifically, the Forged Document contained the following additional provision (the "Spurious Non-Compete"):

> Fun Guys LLC; any of its current, future partners/officers shall not be involved financially or physically in any Christmas light show events at any venue for a time period of 5 years of Effective Date.  Premise of Mutual Rescission and Release Agreement from Fun Guys LLC is that "…this type of business is not a good fit for Fun Guys and we want to get completely away from it.". [sic]  Upon this premis [sic], is based the willingness of Winterland Inc. to rescind the Original Contracts on this Effective Date.

32.     Except for the Spurious Non-compete and the signature lines, the January 26th Release and the Forged Document are identical.

33.     The Spurious Non-Compete was never discussed between Fun Guys and Defendants.   The Forged Document was not previously sent to or otherwise disclosed by Defendants to Fun Guys.

34.     Defendants surreptitiously and fraudulently placed the Spurious Non-Compete into the Forged Document and copied and pasted Reeves' signature and date from the January 26th Release onto that document without informing or otherwise notifying Fun Guys or Reeves and without their knowledge of the added provision.

8

35.     That same day, upon Reeves' return to Ohio, Fun Guys sent Defendants a letter (the "February 14th Letter") addressing and rejecting the Forged Document.  A true and correct copy of the February 14th Letter is attached as Exhibit 7.

36.     The February 14th Letter relates the relevant events, demands adherence to the terms actually agreed to, demands that Fred contact Fun Guys, and further states that if Winterland cashes or deposits the cashier's check, then Fun Guys will consider such cashing or depositing as Winterland's acknowledgement that Winterland agrees to the terms of the January 26th Release.

37.     Winterland cashed (or deposited) the cashier's check.

38.     Following the February 14th Letter, Fun Guys, directly and through its lawyers, repeatedly attempted to contact Fred and Winterland.  Fred and Winterland failed to respond.

39.     As a result of Fred and Winterland's fraudulent conduct, Fun Guys' business is at imminent risk of being destroyed.  Fun Guys is in the process of negotiating: (a) a multi-million-dollar line of credit with a financial institution to fund its purchase of necessary equipment and operating expenses; (b) a deal with the equipment fabricator; and (c) contracts with venues in the United States and Canada to run holiday light shows later this year.  The existence of the Spurious Non-Compete will preclude Fun Guys from obtaining financing or venue contracts, may open up Fun Guys to huge damages claims from other parties with whom it already has contracts and destroy Fun Guys' business and investment.  For those reasons, there is no adequate legal remedy to fully protect Fun Guys' interests.

<u>COUNT I</u>

**DECLARATORY JUDGMENT THAT FUN GUYS AND WINTERLAND
ENTERED INTO A BINDING CONTRACT THE TERMS OF WHICH WERE ESTABLISHED BY
THE JANUARY 26 RELEASE, THE FEBRUARY 9TH EMAIL AND WINTERLAND'S
RESPONSE TO THAT EMAIL**

40.     Fun Guys incorporates by reference paragraphs 1 through 39 of this Complaint.

41.     Under 28 U.S.C. § 2201 an actual controversy exists between Fun Guys and Winterland relating to the terms of their release and rescission agreement.

42.     There is a real and immediate controversy between Fun Guys and Winterland concerning the legal rights of the parties.  Fun Guys contends that a contract was formed on February 8 which does not contain any non-compete provision.  Fun Guys further contends that the Forged Document containing the non-compete provision is void and unenforceable based on Fred's and Winterland's fraud.  Fun Guys further contends that the Spurious Non-Compete is unenforceable on its face.  Winterland has refused to respond to multiple attempts to resolve the matter, apparently on the belief that the Forged Document is binding and that it may enforce the non-compete.

43.     The controversy is justiciable and ripe for judicial resolution through declaratory judgment because the existence of the non-compete provision in the Forged Document has an immediate adverse impact on Fun Guys' ability to conduct its business.  Its ability to obtain financing is jeopardized, as is its ability to satisfy current client contracts and to solicit new clients.

44.     A declaratory judgment will resolve the parties' dispute as to the terms of the agreement.

45.     Immediate relief is necessary to preserve the rights of Fun Guys and to avoid the destruction of Fun Guys' business.

46.     The January 26th Release, the February 9th Email, and defendants' response to the February 9th email memorialized all the terms of Fun Guys' and Winterland's agreement relating to the rescission of the Lease Agreements and the release of Fun Guys' and Winterland's rights

under the Lease Agreements.   Those documents constituted an offer and acceptance, memorialized a meeting of the minds and established a binding contract.

47.     Fun Guys fully performed under the parties' agreement by tendering to Winterland a bank draft in the amount of $20,000.00, as called for under the agreement.

48.     Winterland received, accepted and cashed the $20,000 bank draft.

49.     Therefore, Fun Guys respectfully requests that this Court declare that Fun Guys and Winterland entered into a binding contract the terms of which are fully set forth in the January 26th Release, the February 9th Email, and Winterland and Fred's response to the February 9th Email.

## COUNT II

**DECLARATORY JUDGMENT THAT THE FORGED DOCUMENT IS NOT A BINDING CONTRACT**

50.     Fun Guys incorporates by reference paragraphs 1 through 49 of this Complaint as if herein fully set forth.

51.     The Forged Document contains a term, namely, the Spurious Non-Compete that was never discussed, much less agreed to, by the parties.

52.     In addition, Defendants surreptitiously and fraudulently placed the Spurious Non-Compete into the Forged Document and copied and pasted Reeves' signature from the January 26th Release onto that document without informing or otherwise notifying Fun Guys or Reeves and without their knowledge or consent.

53.     There was no meeting of the minds with respect to the Forged Document or the Spurious Non-Compete.

54.    Defendants fraudulently misrepresented to Fun Guys that the document Fred signed and handed to Reeves on February 14 was the January 26th Release.   Fun Guys and Reeves reasonably relied on Defendants' misrepresentation.

55.    In so doing, Defendants fraudulently obtained and cashed Fun Guys' $20,000 cashier's check by falsely representing that the Forged Document contained the same terms as the January 26th Release.

56.    Therefore, Fun Guys respectfully requests that this Court declare that the Forged Document is not a binding contract and that the Spurious Non-Compete is null, void, invalid and unenforceable as a result of fraud, forgery, and the lack of any meeting of the minds.

**COUNT III**

**DECLARATORY JUDGMENT THAT THE SPURIOUS NON-COMPETE IS UNENFORCEABLE**

57.    Fun Guys incorporates by reference paragraphs 1 through 56 of this Complaint.

58.    A non-competition agreement is only valid and enforceable if it is supported by a legitimate and protectible business interest, has adequate consideration, and is reasonable in terms of time, geography and types of activity prohibited.

59.    The Spurious Non-Compete does not meet any of these criteria, let alone all of them.

60.    The Spurious Non-Compete does not protect any legitimate business interest of Winterland.  Its only conceivable purpose is the illegitimate one of preventing competition.

61.    The geographic scope of the Spurious Non-Compete is unreasonable.    The geographic scope of the Spurious Non-Compete is worldwide.   On the other hand, the only business connection between the parties in the underlying Lease Agreements pertains solely to events in three locations:  a park in the small Cleveland suburb of North Ridgeville, Ohio; a park

in the city of Kitchener, Ontario, Canada; and a campground in Ottawa, Ontario, Canada.

59.     The temporal scope of the Spurious Non-Compete, five years, is also unreasonable and bears no relationship to the time period in which Fun Guys performed services at the three locations—that is, a few weeks during the 2016 holiday season.

62.     The scope of the prohibited activity is unreasonable.  The business relationship between Winterland and Fun Guys was solely a lessor-lessee relationship with respect to the Leased Equipment for three venues.  It is illogical and unreasonable that to resolve a dispute over a lease agreement relating to these limited goods and venues that Fun Guys could be completely barred from doing the business for which it was formed—putting on light shows.

63.     Winterland provided no consideration to Fun Guys for the Spurious Non-Compete.

64.     The Spurious Non-Compete is therefore invalid and unenforceable.

65.     Therefore, Fun Guys respectfully requests that this Court declare that the Spurious Non-Compete is invalid and unenforceable.

### COUNT IV

#### FRAUD

66.     Fun Guys incorporates by reference paragraphs 1 through 65 of this Complaint.

67.     Defendants committed a fraud against Fun Guys.

68.     In particular, Defendants made false and fraudulent misrepresentations to Fun Guys and omitted and concealed key facts from Fun Guys.

69.     Among the false and fraudulent representations and omissions were the following:

a.      Fred's and Winterland's fraudulently affixing Reeves' signature and date to the Forged Document on or before February 14, 2017.

13

b.      Fred's and Winterland's fraudulently representing to Reeves in a meeting in Marion, Indiana on February 14, 2017 that the Forged Document was in fact the January 26th Release.

c.      Fred's and Winterland's fraudulently representing to Reeves in a meeting in Marion, Indiana on February 14, 2017 that there was no need for Fred to sign the copy of the release brought to the meeting by Reeves because he had already signed it.

d.      Fred's and Winterland's fraudulently omitting to disclose and concealing from Reeves that they had added a material term to the agreement that he provided to Reeves in return for the $20,000 payment.

e.      Fred's and Winterland's omitting to disclose and fraudulently concealing from Reeves in a meeting in Marion, Indiana on February 14, 2017 that they had copied and pasted Reeves' signature onto the Forged Document.

70.    Each of the false representations and omissions was material.

71.    Each of the false representations and omissions was made by the Defendants knowing that it was false.  Defendants had a duty to disclose the omissions and concealments.

72.    Each of the false representations and omissions was made with the intent to induce Fun Guys to accept a contract to which they had not agreed and to make a $20,000 payment.

73.    Fun Guys reasonably relied on the false representations and omissions.  It would not have tendered payment to Defendants had it known the Spurious Non-Compete was inserted into the Forged Document.  It would not have agreed to the Spurious Non-Compete.

74.    As a direct and proximate result of the fraud and the purported world-wide, five-year non-compete, Fun Guys is faced with the potential total destruction of its business,

including loss of a $2,000,000 line of credit that will allow Fun Guys to purchase the necessary equipment and fund operating expenses for its business; loss of Fun Guys' capital investment; loss of its $20,000 payment to Winterland; losses in the hundreds of thousands of dollars for breach of existing multi-year contracts with three venues; losses of additional hundreds of thousands of dollars for breach of existing multi-year advertising contracts with media outlets; losses of hundreds of thousands or millions of dollars in profits from shows expected to be put on at other venues; and thousands of dollars in attorneys' fees.

75.   Winterland's and Fred's actions were willful, wanton and malicious.

## COUNT V

### CONVERSION

76.   Fun Guys restates and realleges Paragraphs 1 through 75 as if fully stated herein.

77.   Defendants knowingly and intentionally exerted unauthorized control over Fun Guys' property when they accepted and cashed the $20,000 cashier's check under fraudulent pretenses.  Defendants have refused to respond to Fun Guys' efforts to resolve this matter and obtain repayment.

78.   The cashier's check was an identifiable and determinate sum that was to be applied by Defendants for a certain purpose.

79.   Defendants' conduct constitutes criminal conversion under IC 35-43-4-3.

80.   As a result, Defendants are liable for treble damages, costs of the action, and reasonable attorneys' fees, among other losses, pursuant to IC 34-24-3-1.

## COUNT VI

### FRAUD IN THE INDUCEMENT (LEASE AGREEMENTS)

81.   Fun Guys restates and realleges paragraphs 1-80 as if fully stated herein.

82.     At the time the Lease Agreements were negotiated and signed, Defendants represented to Fun Guys that Winterland, Inc. was an extant corporation with the capacity to enter into contracts under Indiana law.

83.     That representation was false.  Winterland, Inc. had not in fact existed or had any capacity under Indiana law for years prior to that time.

84.     The misrepresentation was made knowingly and intentionally and with the specific intent to fraudulently induce Fun Guys to enter into the Lease Agreements.

85.     The misrepresentation was material to Fun Guys' decision to enter into the Lease Agreements.

86.     The misrepresentation reasonably induced Fun Guys' to enter into the Lease Agreements.

87.     Fun Guys reasonably relied on the misrepresentation.

88.     Fun Guys has been damaged as a result.

89.     Defendants acted willfully, wantonly and maliciously.

<u>PRAYER FOR RELIEF</u>

For these reasons plaintiff respectfully requests the following relief:

A.  a temporary restraining order, preliminary and permanent injunction barring the enforcement of the Spurious Non-Compete;

B.  declarations as set forth in Counts I to III of this Verified Complaint;

C.  compensatory damages on Counts IV, V and VI;

D.  punitive damages on Counts IV and VI;

E.  treble damages on Count V;

F.  an order voiding the Lease Agreements on Count VI;

G.  costs of the action and reasonable attorneys' fees; and

H.  such other relief as the Court deems appropriate.

DATED:  MARCH 3, 2017                 Respectfully submitted,


                         By:    /s/ Michael L. Schultz
                                Michael L. Schultz (20361-49)
                                Jeremy L. Fetty (26811-06)
                                PARR RICHEY FRANDSEN PATTERSON
                                KRUSE LLP
                                251 North Illinois Street, Suite 1800
                                Indianapolis, Indiana 46204
                                Telephone:     (317) 269-2500
                                Facsimile:     (317) 269-2514
                                Email:         mschultz@parrlaw.com
                                               jfetty@parrlaw.com


                                OF COUNSEL

                                Chris Gair (ARDC # 6190781)
                                Kristi L. Nelson (ARDC # 6229943)
                                Gair Eberhard Nelson Dedinas Ltd
                                1 E. Wacker Dr., Suite 2600
                                Chicago, IL 60601
                                312/600-4900
                                cgair@gairlawgroup.com
                                knelson@gairlawgroup.com


                                *Counsel for plaintiff Fun Guys, LLC*

## **VERIFICATION**

I, Grant Reeves, Chief Executive Officer of Fun Guys, LLC, declare under penalty of perjury as provided in 28 U.S.C. §1746, that the foregoing statements set forth in the Verified Complaint are true and correct .

Dated:       March 3, 2017

_____

Grant Reeves

18